## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

LAURA VEST, individually and on behalf of all others similarly situated,

      Plaintiff,

  v.

DISH NETWORK CORPORATION,

      Defendant.

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

      Plaintiff Laura Vest ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this class action complaint against Defendant Dish Network Corporation ("Dish" or "Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

### <u>INTRODUCTION</u>

      1.    Plaintiff brings this class action lawsuit on behalf of all persons who entrusted Dish with sensitive personal information that was subsequently exposed in a data breach that was discovered February of 2023 (the "Data Breach" or the "Breach").[1]

---

[1] *Data Breach Notifications – DISH Network L.L.C.*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last visited June 7, 2023).

2.      Dish offers customers a wide range of television programming options, including numerous channels, interactive features, and innovative technologies to enhance their viewing experience. Dish provides its television services to residential and commercial customers, catering to their specific needs and requirements. Dish provides its services to approximately 19 million customers.[2]  Dish also has over 13,800 employees worldwide, with almost 10,000 in the United States.[3]

3.      Dish stores sensitive personal data of thousands of former and current employees and their family members.

4.      Plaintiff's claims arise from Dish's failure to safeguard personally identifying information that was entrusted to it in its capacity as a television and internet services provider, and its accompanying responsibility to store and transfer that information.

5.      In or around May of 2023, Dish acknowledged that between February 22 and February 23, 2023, hackers accessed its internal servers that Dish uses to store sensitive personal information for its employees and their family members.   The Data Breach impacted approximately 300,000 individuals, including employees of Defendant and their family members.

6.      The personal information that was accessed was highly sensitive in nature. Specifically, the breached data included personal identifying information such as Social Security Numbers, names, addresses, dates of birth, and Driver's License numbers (the "PII").

7.      Despite acting, and marketing itself, as a safe container for sensitive information, Dish failed to take precautions designed to keep that information secure.

---

[2] *Quick Facts*, DISH NEWSROOM, https://about.dish.com/company-info (last visited June 7, 2023).
[3] *DISH Employee Directory*, ZOOMINFO, https://www.zoominfo.com/pic/dish-network-llc/11452565 (last visited June 7, 2023).

8.    The sensitive nature of the data exposed through the Data Breach, including Social Security numbers, signifies that Plaintiff and Class members have suffered irreparable harm.  They are now subject to an increased risk of identity theft and will be for the rest of their lives.

9.    Dish owes a duty to Plaintiff and Class members to maintain adequate security measures to safeguard the PII it collected and was entrusted with.  Defendant breached its duty by failing to implement and/or maintain adequate security practices.

10.    Dish also delayed, as long as months, to admit and give notice of the Data Breach. It waited despite knowing that hackers accessed its internal servers and that sensitive PII was compromised.

11.    As a result of the Data Breach, Plaintiff's and Class members' PII has been exposed to criminals for misuse. Plaintiff and the Class have suffered and will continue to suffer injuries, as a result of the Data Breach and the accompanying delay in its disclosure, including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal information.

12.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence, negligence per se, breach of implied contract, and unjust enrichment.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and

costs. At least one member of the Class defined below is a citizen of a different state than

Defendant, and there are more than 100 putative Class members.

14.     This Court has personal jurisdiction over Defendant because Defendant maintains

its headquarters in this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial

part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

16.     Plaintiff Laura Vest is a citizen of Virginia and resides in Elliston, Virginia.  On

May 17, 2023, she received a data breach notification letter – dated May 17, 2023 – from Dish

informing her that PII  was compromised in the Data Breach.  Since the data breach, Ms. Vest has

been notified by Experian that her PII has been found on the dark web.  As a consequence of the

Data Breach, Ms. Vest has been forced to and will continue to invest significant time monitoring

her accounts to detect and reduce the consequences of likely identity fraud.  Plaintiff is subject to

substantial and imminent risk of future harm.

17.     Defendant Dish is a Colorado corporation headquartered at 9601 S Meridian Blvd,

Englewood, CO 80112. It provides services to millions of customers across the United States,

offering a wide range of television programming options, high-speed internet access, and voice

communication services.

## FACTUAL BACKGROUND

**A.    The Data Breach**

18.    Hackers gained access to the internal servers that Dish uses to store PII. The internal servers contained a range of personal information, including names, addresses, dates of birth, Social Security numbers and Driver's license numbers.

19.    In May of 2023, Dish sent data breach notice letters to the individuals whose data, at least according to Dish, was compromised in the breach.

20.    Dish has disclosed that approximately 296,000 people were affected by the data breach.[4]

21.    Dish's notification letters state that Dish contracted "[t]he services of cyber-security experts and outside advisors" and "determined that our customer databases were not accessed in this incident. However, we have confirmed that certain employee-related records and personal information (along with information of some former employees, family members and a limited number of other individuals) were among the data extracted."[5]  This effort to downplay the breadth of, or impact caused by, the Data Breach has the effect of misleading data breach victims into believing they are not subject to any harm.

22.    While Dish sought to minimize the damage caused by the breach, it cannot and has not denied that there was unauthorized access to the PII of Plaintiff and Class members.

---

[4] *Data Breach Notifications – DISH Network L.L.C.*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last visited June 7, 2023).

[5] *Notification Letter Template*, OFFICE OF THE MAINE ATTORNEY GENERAL, *available at* https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last visited June 7, 2023).

23.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**B.      Dish's Failure to Prevent, Identify and Timely Report the Data Breach.**

24.     Dish, as a telecommunications provider provides customers with an extensive selection of entertainment options, including a vast array of television channels, on-demand content, streaming services, and interactive features.

25.     Dish has an annual revenue of over $14.7 billion.[6] Dish also has over 13,800 employees worldwide, with almost 10,000 in the United States.

26.     Dish failed to take adequate measures to protect its computer and internal servers against unauthorized access.

27.     Dish was not only aware of the importance of protecting the PII that it maintains, as alleged, it flaunted its capability to do so.  The PII Dish allowed to be exposed in the Data Breach is the type of private information that Dish knew or should have known would be the target of cyberattacks.

28.     Despite its own knowledge and supposed expertise on the subject of cybersecurity, and notwithstanding the FTC's data security principles and practices,[7] Dish failed to disclose that its systems and security practices were inadequate to reasonably safeguard their sensitive personal information.

---

[6] *DISH Network Reports Fourth Quarter, Year-end 2022 Financial Results*, DISH NEWSROOM, https://about.dish.com/2023-02-23-DISH-Network-Reports-Fourth-Quarter,-Year-end-2022-Financial-Results (last visited June 7, 2023).
[7] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited June 7, 2023).

29.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach.[8]  Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.  Despite this guidance, Dish delayed the notification of the Data Breach for months.

**C.     The Harm Caused by the Data Breach Harmed, Now and Going Forward.**

30.     Victims of data breaches are susceptible to becoming victims of identity theft.

31.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[9]

32.     The type of data that was accessed and compromised here – such as, full name, Social Security number – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

33.     Plaintiff and class members face a substantial risk of identity theft given that their Social Security numbers, addresses, and dates of birth were compromised.  Once a Social Security number is stolen, it can used to identify victims and target them in fraudulent schemes and identity theft.

---

[8] *Id.*
[9] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness  (last visited June 7, 2023).

34.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal identities and online activity.

35.     When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[10]

36.     For example, when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is its pervasiveness.  As data breaches in the news continue to show, PII about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[11]

37.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details

---

[10] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE, Dec. 28, 2020, *available at:* https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited June 7, 2023).
[11] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR, April 3, 2018, *available at:* https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited June 7, 2023).

have a price range of $50 to $200.[12]  Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

38.     A compromised or stolen Social Security number cannot be addressed as simply as, perhaps, a stolen credit card.  An individual cannot obtain a new Social Security number without significant work.  Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number.  Even then, however, obtaining a new Social Security number may not suffice.  According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[14]

39.     The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[15]

40.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[16]

---

[12] *Id.*

[13] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft  (last visited June 7, 2023).

[14] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft  (last visited June 7, 2023).

[15] *Experts advise compliance not same as security*, RELIAS MEDIA https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (Last visited June 7, 2023).

[16] *2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (Last visited June 7, 2023).

41.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[17] Defendant did not rapidly report to Plaintiff and Class members that their PII had been stolen.  Dish, however, delayed notification of the compromise.

42.     Dish offered victims two years of free identity protection services.  The identity protection services offered by Dish is inadequate. Identity thieves often hold onto personal information in order to commit fraud years after such free programs expire.

43.     As a result of the Data Breach, the PII of Plaintiff and Class members have been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include:

a.     unauthorized use of their PII;

b.     theft of their personal and financial information;

c.     costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.     damages arising from the inability to use their PHI;

e.     Improper disclosure of their PII;

f.     loss of privacy, and embarrassment;

g.     trespass and damage their personal property, including PII/PHI;

h.     the imminent and certainly impending risk of having their confidential medical information used against them by spam callers and/or hackers targeting them with phishing schemes to defraud them;

---

[17] *Id.*

i.    costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Data Breach;

j.    the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class members' information on the Internet black market; and

k.    the loss of Plaintiff's and Class members' privacy.

44.    In addition to a remedy for economic harm, Plaintiff and Class members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

45.    Defendant disregarded the rights of Plaintiff and Class members by (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its internal servers were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of

the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class

members prompt and accurate notice of the Data Breach.

46.     The actual and adverse effects to Plaintiff and Class members, including the

imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or

medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction

and the resulting Data Breach require Plaintiff and Class members to take affirmative acts to

recover their peace of mind and personal security including, without limitation, purchasing credit

reporting services, purchasing credit monitoring and/or internet monitoring services, frequently

obtaining, purchasing and reviewing credit reports, bank statements, and other similar information,

instituting and/or removing credit freezes and/or closing or modifying financial accounts, for

which there is a financial and temporal cost. Plaintiff and other Class members have suffered, and

will continue to suffer, such damages for the foreseeable future.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was impacted by
> the Data Breach (the "Class").

48.     Specifically excluded from the Class are Defendant, its officers, directors, agents,

trustees, parents, children, corporations, trusts, representatives, employees, principals, servants,

partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or

other persons or entities related to or affiliated with Defendant and/or its officers and/or directors,

the judge assigned to this action, and any member of the judge's immediate family.

49.     Plaintiff reserves the right to amend the Class definitions above if further

investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

50.     This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

51.     Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiff estimates that the Class is comprised of hundreds of thousands of Class members. The Class is sufficiently numerous to warrant certification.

52.     Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of those of other Class Members because they all had their PII compromised as a result of the Data Breach.  Plaintiff is a member of the Class and her claims are typical of the claims of the members of the Class.  The harm suffered by Plaintiff is similar to that suffered by all other Class members that was caused by the same misconduct by Defendant.

53.     Adequacy of Representation (Rule 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

54.     Superiority (Rule 23(b)(3)): A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation

make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

55.    <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

       a.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

       b.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

       c.    Whether Defendant's storage of Class Member's PII was done in a negligent manner;

       d.    Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' PII;

       e.    Whether Defendant's conduct was negligent;

       f.    Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

       g.    Whether Defendant took sufficient steps to secure its customers' PII;

       h.    Whether Defendant was unjustly enriched;

> i. The nature of relief, including damages and equitable relief, to which
> Plaintiff and members of the Class are entitled.

56. Information concerning Defendant's policies is available from Defendant's records.

57. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

58. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

59. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

60. Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

61. Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of the Class members.

63.     Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

64.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

65.     Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

66.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected its customers' PII.

67.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers.  Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

68.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

69.     Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII.

70.     The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b. Failing to adequately monitor the security of its networks and systems; and

c. Failure to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

71. Defendant, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Defendant's possession.

72. Defendant, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

73. Defendant, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

74. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff and Class Members' PII would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

75. It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in injuries to Plaintiff and Class Members.

76. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

77. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

78.     As a result of Defendant's failure to timely notify Plaintiff and Class Members that their PII had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

79.     As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II
### Negligence *Per Se*
### (On Behalf Plaintiff and the Class)

80.     Plaintiff re-alleges and incorporate by reference herein all the allegations contained above.

81.     Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Dish of failing to use reasonable measures to protect Plaintiff and Class members' PII. Various FTC publications and orders also form the basis of Dish's duty.

82.     Dish violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class members' PII and not complying with industry standards.

83.     Dish's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Dish's systems.

84.     Dish's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

85.     Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

86.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class members.

87.     As a result of Defendant's negligence, Plaintiff and the other Class members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

88.     Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

89.     Plaintiff and the Class provided and entrusted their PII to Defendant. Plaintiff and the Class provided their PII to Defendant, either directly or indirectly through Defendant's clients, as part of Defendant's regular business practices.

90.     In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the PII of Plaintiff and Class members in its possession was secure.

91.     Pursuant to these implied contracts, Plaintiff and Class members provided Defendant with their PII in order for Defendant to provide their services, for which Defendant is compensated.  In exchange, Defendant agreed to, among other things, and Plaintiff understood that Defendant would: (1) provide services to Plaintiff and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; and (3) protect Plaintiff's and Class members PII in compliance with federal and state laws and regulations and industry standards.

92.     Implied in these exchanges was a promise by Defendant to ensure the PII of Plaintiff and Class members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff's and Class members' PII.

93.     A material term of this contract is a covenant by Defendant that they would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff's and Class members' PII to be accessed in the Data Breach.

94.     Indeed, implicit in the agreement between Defendant and its customers was the obligation that both parties would maintain information confidentially and securely.

95.     These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiff and Class members would provide their PII in exchange for services by Defendant. These agreements were made by Plaintiff and Class members as Defendant's customers.

96.     When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class members would not have disclosed their PII to Defendant but for the prospect of utilizing Defendant's services. Conversely, Defendant presumably would not have taken Plaintiff's and Class members' PII if it did not intend to provide Plaintiff and Class members with its services.

97.     Defendant was therefore required to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure and/or use.

98.     Plaintiff and Class members accepted Defendant's offer of services and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

99.     Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII.

100.    Defendant breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiff's and Class members' PII.

101.    Defendant's failure to implement adequate measures to protect the PII of Plaintiff and Class members violated the purpose of the agreement between the parties.

102.    Instead of spending adequate financial resources to safeguard Plaintiff's and Class members' PII, which Plaintiff and Class members were required to provide to Defendant, Defendant instead used that money for other purposes, thereby breaching its implied contracts it had with Plaintiff and Class members.

103.    As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class members, Plaintiff and the Class members suffered damages as described in detail above.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

104.    Plaintiff incorporates the above allegations as if fully set forth herein.

105.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

106.    Plaintiff conferred a benefit upon Defendant by using Defendant's services.

107.    Defendant appreciated or had knowledge of the benefits conferred upon themselves by Plaintiff. Defendant also benefited from the receipt of Plaintiff's PII, as this was used for Defendant administer its services to Plaintiff and the Class.

108.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's services and her PII because Defendant failed to adequately protect her PII. Plaintiff and the proposed Class would not have provided their PII to Defendant or utilized their services had they known Defendant would not adequately protect their PII.

109.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)    For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: June 7, 2023                    **BERENS LAW LLC**


                                       /s/ *Jeffrey A. Berens*
                                       Jeffrey A. Berens
                                       2373 Central Park Blvd., Suite 100
                                       Denver, CO 80238
                                       Telephone: (303) 861-1764
                                       Email: jeff@jberenslaw.com

                                       Mark S. Reich
                                       **LEVI & KORSINSKY, LLP**
                                       55 Broadway, 4th Floor, Suite 427
                                       New York, NY 10006
                                       Telephone: (212) 363-7500
                                       Facsimile: (212) 363-7171
                                       Email: mreich@zlk.com

                                       *Counsel for Plaintiff*